**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**CHARLES C. CLARK**
**Plaintiff,**

**v.** **Case No. 25-C-1450**

**FRANK BISIGNANO,**
**Commissioner of the Social Security Administration**
**Defendant.**

---

## DECISION AND ORDER

Plaintiff Charles Clark seeks judicial review of the denial of his application for social security disability benefits. Plaintiff alleged that he could no longer work due to physical and mental impairments, but the Administrative Law Judge (ALJ) assigned the case concluded following a hearing that plaintiff remained capable of a range of light, unskilled work. Proceeding pro se, plaintiff offers a variety of complaints about the ALJ's conduct of the hearing and interpretation of the evidence, but he fails to demonstrate that the ALJ's decision lacked the support of substantial evidence or misapplied the law, or that he was prejudiced by the manner in which the ALJ handled the hearing, leaving me to affirm.

## I. FACTS AND BACKGROUND

### A. Plaintiff's Application and Agency Decisions

Plaintiff applied for benefits in May 2022, indicating that he became disabled as of July 14, 2020. (Tr. at 249, 275.) He alleged impairments of cervical injury, concussion, whiplash syndrome, chronic body pain, numbness in the fingers, diabetes, limited mobility, anxiety, memory loss, and depression. (Tr. at 331.) Plaintiff related most of his issues to a July 14,

2020, motor vehicle accident. (Tr. at 340; see also Tr. at 344-52, photos of the accident.) In a function report, plaintiff alleged memory loss from the concussion, tremendous pain in his back, neck, shoulders and knees, and uncontrolled diabetes. (Tr. at 480.) As for his activities, plaintiff reported preparing simple meals and doing no outside chores. (Tr. at 482.) He could drive a car at times, but sometimes his wife drove. (Tr. at 483.) Hobbies included watching TV, playing computer games, and reading the Bible. He went to church twice per week. His wife accompanied him everywhere. (Tr. at 484.) He reported that his impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, use his hands, and get along with others. (Tr. at 485.) He did not handle stress or changes in routine well. He reported using a cane, prescribed by his doctor. (Tr. at 486.)

The agency denied the application at the initial level on June 9, 2023 (Tr. at 95, 148) based on the review of Mina Khorshidi, M.D., who found plaintiff capable of light work with occasional climbing of ladders/ropes/scaffolds, and frequent balancing, stooping, kneeling and crouching (Tr. at 102-03), and Frank Orosz, Ph.D., who found mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentration, persistence, or maintaining pace; and mild limitation in adapting or managing oneself (Tr. at 101). Dr. Orosz further opined that plaintiff could concentrate on two to three step tasks for up to one to two hours with normal breaks, and that emotional lability could be expected to occasionally interrupt concentration requiring plaintiff to reorient on the task at hand. (Tr. at 104).

Plaintiff requested reconsideration (Tr. at 159), and in April 2024 the agency sent plaintiff for a mental status exam with Samantha Klockow, Psy.D. (Tr. at 2388). Plaintiff reported anxiety following the 2020 car accident due to changes in his activity/ability level. He also

reported anger symptoms including verbal aggression, depressive symptoms, and memory loss following the accident. (Tr. at 2389.) On mental status exam, plaintiff's speech was within normal limits, he did not appear to attend to any psychosis-related symptoms, and his mood was appropriate and congruent to topic. (Tr. at 2391.) Dr. Klockow diagnosed depression secondary to medical conditions and other specified anxiety. Plaintiff identified difficulty with both short-term memory-related questions and fund of knowledge questions. (Tr. at 2392.) Regarding his work capacity, Dr. Klockow assessed mild limitation in the area of understanding, remembering, or applying information, due to forgetfulness; mild limitation in interacting with others, given his anger reactions; moderate limitation in concentration, persistence, or maintaining pace based on reported anxiety and forgetfulness; and moderate limitation in adapting or managing oneself based on reports of anxiety preventing attendance of appointments at times. (Tr. at 2393.)

On April 26, 2024, the agency affirmed the denial (Tr. at 117, 161) based on the review of Stephen Dufresne, M.D., who agreed plaintiff could perform light work with additional climbing and postural limitations (Tr. at 124), and Robert Barthell, Psy.D., who found moderate limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentration, persistence, or maintaining pace; and moderate limitation in adapting or managing oneself (Tr. at 122). Dr. Barthell further opined that plaintiff could understand and apply short simple instructions, concentrate on two to three steps tasks for up to one to two hours with normal breaks, and perform a job with stable work routines (Tr. at 126).

Plaintiff then requested a hearing before an ALJ.[1] (Tr. at 176.) In a pre-hearing brief, plaintiff's counsel amended the alleged onset date to January 1, 2021. (Tr. at 559.)

**B. Hearing**

On October 2, 2024, plaintiff appeared with counsel for a telephonic hearing before the ALJ. The ALJ also called a vocational expert (VE) to offer testimony on jobs plaintiff might be able to do. (Tr. at 40.)

At the outset of the hearing, plaintiff agreed to proceed by phone. (Tr. at 42-43.) The ALJ also confirmed that the agency was making a verbatim audio recording, which would be the official record, and that no other recording could be made without her permission. Plaintiff and his lawyer both confirmed they were not recording (and neither asked if they could do so). (Tr. at 44.) Counsel noted some outstanding medical records, and the ALJ held the record open for 14 days. (Tr. at 45.) The ALJ also confirmed that plaintiff and counsel had discussed amending the onset date to January 1, 2021, and that is what plaintiff wanted to do. (Tr. at 46-47.)

Plaintiff testified that he was 42 years old and lived with his wife. (Tr. at 47.) He stood 5'6" and weighed 314 pounds. (Tr. at 48.) Plaintiff reported that he experienced back and neck pain, which he rated 7/10. (Tr. at 50-52.) Treatment provided only temporary relief, but hot showers helped. (Tr. at 51-53.) He also reported knee pain. Injections helped for a while. He reported needing a cane, which he used all the time. (Tr. at 54.)

[1] On May 17, 2024, plaintiff's counsel consented to a telephonic hearing. (Tr. at 178.) However, on June 9, 2024, plaintiff filed a pro se objection to a remote hearing and asked to appear in person. (Tr. at 200.) On September 18, 2024, counsel filed another form agreeing to a telephonic hearing. (Tr. at 241-42.) The agency scheduled a telephonic hearing (Tr. at 213) and, as indicated below, plaintiff consented on the record to proceeding in that fashion.

Plaintiff testified that he could stand for 10 minutes, walk 10 minutes, lift five pounds, and sit 10 minutes. (Tr. at 55.) He indicated that he spent about half the day laying down. (Tr. at 55-56.) Plaintiff also testified that he was diabetic, with his sugars not controlled, on an insulin pump. (Tr. at 56.) Plaintiff testified that he took Cymbalta every day, which helped control his anxiety and depression. He also found counseling helpful. (Tr. at 57.) He did very little around the house and denied hobbies. He did attend church serv ices. (Tr. at 58.)

On questioning by counsel, plaintiff testified that he always had pain, at some level. He laid down due to pain and depression. High blood sugar caused lethargy and difficulty thinking. (Tr. at 59.) He could do chores for about 10 minutes before he had to stop due to pain. (Tr. at 60.) His doctors had not discussed treatment other than pain management. Counsel asked if there was anything else they hadn't talked about, and plaintiff said: "No. I believe we've covered it." (Tr. at 61.)

The ALJ then turned to the VE, asking a hypothetical question assuming a person capable of light work, with no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; and able to understand, remember and carry out simple instructions, use judgment to make simple work-related decisions, and deal with occasional changes in a routine work setting. (Tr. at 63.) The VE testified that such a person could work as a packer, inspector, or small products assembler. (Tr. at 64.) Reducing the exertional level to sedentary, the person could work as an inspector, sorter, and bench assembler; adding use of a cane to ambulate did not change the answer. (Tr. at 64.) However, no work would be available for a person who needed to lay down, outside of breaks. (Tr. at 64.)

### C. ALJ's Decision

On November 25, 2024, the ALJ issued an unfavorable decision. (Tr. at 13.) Following the five-step disability evaluation process (Tr. at 17-18), at step one the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2021, the alleged onset date (Tr. at 18). At step two, the ALJ found that plaintiff had the severe impairments of lumbar spine degenerative disc disease and spondylosis, thoracic degenerative disc disease, cervical spine degenerative disc disease, left knee meniscus tear, right knee lateral patellar lift, diabetes mellitus, obesity, major depressive disorder, and generalized anxiety disorder. (Tr. at 19.) At step three, the ALJ determined that none of these impairments met or equaled the severity of a Listing. (Tr. at 19-20.) The ALJ evaluated plaintiff's mental impairments under Listings 12.04 or 12.06, which are satisfied if the claimant has at least one "extreme" or two "marked" limitations in the four broad areas of functioning. The ALJ found that plaintiff's mental impairments caused mild restriction in understanding, remembering, or applying information; mild limitation in interacting with others; moderate difficulties in concentration, persistence, or maintaining pace; and mild limitation in adapting or managing oneself. (Tr. at 20.)

Prior to step four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform light work, except that he could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and occasionally balance, stoop, kneel, crouch and crawl. (Tr. at 20-21.) Mentally, the ALJ determined that plaintiff could understand, remember and carry out simple instructions, use judgment to make simple work-related decisions, and deal with occasional changes in a routine work setting. (Tr. at 21.) In making this finding, the ALJ considered plaintiff's alleged symptoms and the medical opinion evidence. (Tr. at 21.)

The ALJ summarized plaintiff's allegations from his function report and hearing

testimony, finding that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 21-22.) In support of this finding, the ALJ reviewed the medical evidence, which documented a lengthy course of treatment for neck and back pain following the motor vehicle accident. (Tr. at 22.) However, imaging identified minimal/mild abnormalities; exams generally revealed normal gait, range of motion, and strength; and plaintiff reported benefit from injections and medication. (Tr. at 22-24.) The ALJ concluded that the absence of more aggressive treatment undermined the alleged severity of plaintiff's symptoms. (Tr. at 24-25.) The record also documented treatment for diabetes, but that condition had been reasonably controlled with insulin. (Tr. at 25.)

Plaintiff testified that he needed a cane, but the ALJ found the use of an ambulatory aid not medically necessary. Plaintiff's pain management provider, who offered the most consistent treatment, never mentioned the chronic use/need for a cane. Further, repeated clinical examinations revealed no objective abnormalities consistent with the need for a cane. The record documented that plaintiff's primary care provider ordered a walker after plaintiff called asking for one. But again, the examinations generally documented normal gait and normal neurological findings, as well as positive response to treatment, so the ALJ found a walker also not medically necessary. In any event, the ALJ noted, even with a sedentary RFC and allowed use of a cane, the VE was able to identify a significant number of jobs plaintiff could still do. (Tr. at 25.)

The ALJ also reviewed the evidence regarding plaintiff's mental impairments, which revealed sporadic complaints of anxiety and depression, treated with medication. (Tr. at 25.)

However, mental status exams were generally unremarkable, plaintiff did not initially follow through on a behavioral health referral, and he inconsistently took the medication. (Tr. at 25-26.) In April 2024, plaintiff completed a psychological evaluation at the request of the agency, with Dr. Klockow noting a generally normal mental status exam. Thereafter, plaintiff presented for an initial mental health diagnostic evaluation, alleging depression and anxiety, but the provider noted normal speech and behavior, intact memory, and no indication of deficits in attention and concentration. (Tr. at 26.)

The ALJ further discussed plaintiff's activities, including volunteering at church, attending bible study, and regularly interacting with friends/family. In his function report, plaintiff indicated that he could drive a car, shop in stores or online, and manage personal finances. (Tr. at 26.) He generally displayed no problems getting along with providers and staff. (Tr. at 27.)

Turning to the opinion evidence, the ALJ found the reports of the agency medical consultants generally persuasive. (Tr. at 27.) The consultants found that plaintiff could perform light work with additional climbing and postural limitations. (Tr. at 27-28.) The ALJ found these assessments well supported and consistent with the substantial evidence of record. However, in deference to his pain complaints, the ALJ further limited plaintiff to no ladders, ropes, or scaffolds; occasional use of ramps and stairs; and occasional balancing. (Tr. at 28.)

The initial level psychological consultant opined that plaintiff could concentrate on two to three step tasks for up to one to two hours at a time with normal breaks, and that plaintiff's emotional lability could be expected to occasionally interrupt concentration requiring him to reorient on the task at hand. The reconsideration level consultant opined that plaintiff could concentrate on two to three step tasks for up to one to two hours at a time with normal breaks, that his emotional lability could be expected to occasionally interrupt concentration, and that

plaintiff could understand and apply short, simple instructions and perform a job with stable work routines. The ALJ found these opinions generally unpersuasive, as their proposed workplace restrictions did not contain vocationally relevant terms. For this reason, the ALJ provided somewhat different limitations to better quantify plaintiff's workplace restrictions and abilities. (Tr. at 28.)

The ALJ found the consultative opinion completed by Dr. Klockow partially persuasive. Based on her evaluation, Dr. Klockow found mild to moderate limitations in the four broad areas of mental functioning. While the ALJ agreed plaintiff's mental impairments did not result in disabling limitations, terms such as "mild" and "moderate" offer little vocational relevance. Consequently, the ALJ accommodated any moderate deficits by limiting the plaintiff to simple instructions, simple work-related decisions, and only occasional changes in a routine work setting. (Tr. at 28.)

Finally, the ALJ considered the September 2024 opinion from plaintiff's counselor, Ashleigh Kovacik, LPC, describing a "slight" limitation in plaintiff's ability to interact with others and a "moderate" restriction of activities of daily living. (Tr. at 28.) Ms. Kovacik offered no opinion regarding plaintiff's functional abilities within the workplace, such as his ability to interact with others, remain on task, and maintain regular attendance. The ALJ found this opinion unpersuasive because it lacked specific vocationally relevant language. Further, Ms. Kovacik did not start treating plaintiff until July 2024; thus, she could not provide a reasonably reliable assessment of function for the entire period at issue. And, given the brief treating relationship, the ALJ suspected that Ms. Kovacik relied on plaintiff's subjective complaints in completing her report. (Tr. at 29.)

At step four, the ALJ found that plaintiff could not perform his past relevant work given

this RFC. (Tr. at 29.) At step five, however, the ALJ concluded that plaintiff could do other unskilled light jobs, as identified by the VE, including packer, inspector, and assembler. (Tr. at 30.) The VE also identified a significant number of unskilled sedentary jobs that could be done with a cane. (Tr. at 30.) The ALJ accordingly found plaintiff not disabled. (Tr. at 31.)

On August 18, 2025, the Appeals Council denied plaintiff's request for review (Tr. at 1), making the ALJ's decision the final decision of the Commissioner of Social Security. See Prater v. Saul, 947 F.3d 479, 481 (7th Cir. 2020). This action followed. I initially dismissed the case for failure to prosecute when plaintiff failed to timely file with the court a brief in support of his action. I later vacated that order and permitted the case to proceed. Plaintiff has filed a brief, the Commissioner a response, and plaintiff a reply.

## II. DISCUSSION

### A. Standard of Review

The court will reverse an ALJ's decision only if it is based on incorrect legal standards or unsupported by substantial evidence. Lincoln v. Bisignano, 173 F.4th 886, 891 (7th Cir. 2026). The threshold for "substantial evidence" is low, requiring only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Under this deferential standard, the court will not re-weigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination so long as substantial evidence supports it. Lincoln, 173 F.4th at 891. "Put most simply, [the court] will reverse an ALJ's decision only if the record compels a contrary result." Thorlton v. King, 127 F.4th 1078, 1081 (7th Cir. 2025) (internal quote marks omitted).

The ALJ is required to build a "logical bridge" from the evidence to her conclusion by providing an explanation sufficient to allow the court to assess the validity of the ultimate findings and afford meaningful review. Chrisman v. Bisignano, 137 F.4th 618, 624 (7th Cir. 2025). But this articulation requirement is minimal. "An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." Warnell v. O'Malley, 97 F.4th 1050, 1053 (7th Cir. 2024). And on appeal it is not enough for a claimant to criticize the ALJ's decision about his functional capacity to work; he "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." Morales v. O'Malley, 103 F.4th 469, 470 (7th Cir. 2024).

**B. Plaintiff's Arguments**

In his brief, plaintiff begins by asking the court to reevaluate the evidence in his case. (R. 16-1 at 4.) However, a reviewing court may not re-weigh evidence or substitute its judgment for that of the ALJ. Instead, review is limited to determining whether the ALJ's decision is supported by substantial evidence and free of harmful legal error.

As summarized above, the ALJ agreed that plaintiff suffered from numerous severe physical and mental impairments (Tr. at 19), which limited him to a reduced range of light work (Tr. at 20-21.) The ALJ supported her decision with substantial evidence, considering the objective medical evidence (e.g., imaging studies and exam findings), the nature and effectiveness of plaintiff's treatment, reports of his activities, and the opinions of the agency medical and psychological consultants. (Tr. at 21-29.) In deference to his pain complaints, the ALJ found plaintiff more limited than did the agency medical consultants (Tr. at 28), "illustrating reasoned consideration given to the evidence [plaintiff] presented." Burmester v. Berryhill, 920

F.3d 507, 510 (7th Cir. 2019). Plaintiff cites no medical opinion supporting greater limitations than the ALJ found. See Best v. Berryhill, 730 Fed. Appx. 380, 382 (7th Cir. 2018) ("There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'") (quoting Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004)). The ALJ also applied the correct legal standards, following the five-step sequential evaluation process for determining disability (Tr. at 17, citing 20 C.F.R. §§ 1520(a) and 416.920(a)), applying the two-step test for considering a claimant's symptoms (Tr. at 21, citing SSR 16-3p), and evaluating the medical opinions in accordance with the requirements of 20 C.F.R. §§ 1520c and 416.920c (Tr. at 21). Plaintiff makes no claim of legal error.

Plaintiff contends that the transcript contains many mistakes and misrepresentations. (R. 16-1 at 4.) His complaints fall in three general categories: (1) the ALJ's consideration of the evidence, (2) the ALJ's conduct of the hearing, and (3) the agency's handling of his claim.

**1. Consideration of the Evidence**

Plaintiff notes that he has experienced pain and mental limitations, and undergone a variety of procedures, since the accident. (R. 16-1 at 5.) The ALJ acknowledged plaintiff's reported symptoms following the accident (Tr. at 21-22), and she reviewed the treatment records in some detail (Tr. at 22-27). Plaintiff identifies no important evidence the ALJ overlooked.

Plaintiff takes issue with the ALJ's finding that his diabetes was "relatively controlled." (R. 16-1 at 8, citing Tr. at 22.) He contends this is not true, as his medical records show the diabetes is uncontrolled. (R. 16-1 at 8.) The ALJ cited a May 14, 2021, note from plaintiff's primary physician, Dr. Shah, in support of this finding. (Tr. at 22, citing Ex. 2F/60 [Tr. at 662].) At that time, Dr. Shah assessed "Type 2 diabetes mellitus without complication," stating: "Home

readings are relatively controlled." (Tr. at 662.) The ALJ acknowledged that during a visit in August 2021 plaintiff's A1c had worsened, although plaintiff admitted missing some insulin doses and eating a poor diet. (Tr. at 23, citing Tr. at 650.) Nevertheless, exams from around that time revealed no diabetic complications. (Tr. at 23, citing Tr. at 643, 645, 651.) And, plaintiff's treating endocrinologist, Dr. Salahuddin, later noted that plaintiff's diabetes was "optimally controlled." (Tr. at 24, quoting Tr. at 2788.) In reply, plaintiff states that he had high and low numbers when his insulin pump was broken. (R. 37 at 6-7.) But as the ALJ noted, even when plaintiff's numbers were off, the record noted no diabetic complications. (Tr. at 23.) Plaintiff cites no evidence compelling the inclusion of additional limitations due to diabetes.

Plaintiff next challenges the ALJ's finding that he did not need a walker or cane, stating that his doctor prescribed assistive devices. (R. 16-1 at 8-9, citing Tr. at 25.) The ALJ acknowledged that plaintiff's primary care provider ordered a walker after plaintiff called asking for one. (Tr. at 25, citing Tr. at 2709.) The ALJ also acknowledged that plaintiff sometimes appeared for appointments using a cane. However, plaintiff's pain management provider, who offered the most consistent treatment, never mentioned the chronic use/need for a cane, and exams revealed no objective abnormalities consistent with the need for a cane. Instead, exams largely documented normal gait and normal neurological findings. (Tr. at 25.) Plaintiff fails to address the evidentiary basis for the ALJ's finding, and he does not demonstrate that the record compels a contrary result.[2] Nor does plaintiff acknowledge the ALJ's alternate finding:

---

[2]In reply, plaintiff cites his call to Dr. Shah's office in which he indicated he was unstable and wobbly even when using a cane and at times needed to find a place to sit. (R. 37 at 7, citing Tr. at 2439.) The ALJ acknowledged this evidence but relied on other findings of normal gait and strength. (Tr. at 25.) Plaintiff also notes in reply that at a visit with Dr. Samuel on June 28, 2022, he had a slow gait and used a cane (Tr. at 1302); during a visit with Diane Billmyer, PA-C, on September 23, 2022, he had an antalgic gait and used a cane for stability (Tr. at

that a significant number of jobs still remained even if plaintiff were limited to sedentary work and allowed use of a cane. (Tr. at 25, 30.) This alternate finding would render harmless any error in the ALJ's finding that a cane was not medically required. See Edward C. v. Bisignano, No. 1:25-cv-01140-RLH, 2026 U.S. Dist. LEXIS 102128, at *9 (C.D. Ill. May 8, 2026) (finding harmless any error in assessing cane use where the VE identified jobs that could be done with a cane).

Citing Dr. Barthell's report, plaintiff contends that he has understanding and memory limitations. (R. 16-1 at 10, citing Tr. at 137.) The ALJ found that plaintiff had a mild limitation in the broad area of understanding, remembering, or applying information (Tr. at 20), consistent with the findings of the initial level psychological consultant, Dr. Orosz (Tr. at 101), and the examining consultant, Dr. Klockow (Tr. at 2393), providing a specific explanation for her conclusion:

> [T]he claimant's ability to understand, remember, or apply information appears mildly restricted. There is no evidence of significant issues following written or spoken instructions. The record confirms that the claimant is able to perform simple maintenance and go to doctor's appointments. He is able to provide information about his health, follow instructions from healthcare professionals, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers. The record makes no mention of any chronic

---

1274); and during a June 6, 2024, visit with Dr. Salahuddin, he was noted to use a cane (Tr. at 24320). (R. 37 at 8-10.) The ALJ acknowledged that plaintiff sometimes appeared with a cane but found that other evidence showed a hand-held assistive device was not medically necessary. (Tr. at 25.) Finally, plaintiff cites observations from a September 5, 2022, functional capacity assessment, e.g., use of a cane, using a table for support, struggles to stand. (R. 37 at 13; Tr. at 858-59.) Following this assessment, Elizabeth Kremer, PT, stated: "We are unable to comment on the client's capabilities due to the conditionally valid nature of this assessment." (Tr. at 854.) The form explained that "conditionally valid" meant "provided submaximal effort." (Tr. at 860.) In a September 15, 2022, letter to plaintiff's counsel, Ms. Kremer stated: "The results represent the levels the client perceives as their capacity, even though the client can physically do more." (Tr. at 844.) Plaintiff develops no argument that the ALJ reversibly erred by not citing this assessment.

issues with the claimant's short- or long-term memory.

(Tr. at 27.) Plaintiff develops no argument that this finding lacks the support of substantial evidence. Moreover, the ALJ's RFC was consistent with Dr. Barthell's narrative explanation. After finding that plaintiff had understanding and memory limitations (Tr. at 137), Dr. Barthell recommended "short simple instructions" (Tr. at 138), and the ALJ included a corresponding restriction (Tr. at 21: "understand, remember, and carry out simple instructions"). While the ALJ's RFC did not precisely track all of the psychological consultants' recommendations—using different, more "vocationally relevant terms" than did the consultants to better quantify plaintiff's workplace restrictions and abilities (Tr. at 28)—it did not have to. See Webber v. Kijakazi, No. 20-2990, 2021 U.S. App. LEXIS 24776, at *15 (7th Cir. Aug. 19, 2021) ("[A]n ALJ need not use any 'magic words' in an RFC assessment; we will not reverse so long as the assessment 'incorporate[s] all of the claimant's limitations supported by the medical record.'") (quoting Crump v. Saul, 932 F.3d 567, 570 (7th Cir. 2019)); see also Thomas v. Colvin, 745 F.3d 802, 808 (7th Cir. 2014) ("RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide.").

In reply, plaintiff notes that a March 3, 2021, treatment note from All Saints states that the doctor tried to avoid using complex medical terminology. (R. 37 at 12, citing Tr. at 1166.) This appears to be a general notation, which appears verbatim in other All Saints records (see, e.g., Tr. at 976, 985, 1006), rather than a specific finding that plaintiff experienced difficulties comprehending what his doctor said. Indeed, in his exam findings from the March 3 visit, Dr. Ahmad (plaintiff's then-primary provider) noted that plaintiff was fully oriented, with coherent thought process, normal memory, and normal judgment. (Tr. at 1165.) Plaintiff also cites various observations made by Dr. Klockow during the consultative exam (R. 37 at 16-18, citing

Tr. at 2391), but he does not explain how they compel the inclusion of additional mental limitations.

Plaintiff complains that the photos of his car accident in the record are black and white, and thus unrecognizable. (R. 16-1 at 10-11; Tr. at 344-52.) The ALJ acknowledged the accident and discussed plaintiff's subsequent treatment. (Tr. at 22.) Plaintiff fails to explain how he was prejudiced by the quality of the photos; the issue in this case was not whether plaintiff was involved in a serious auto accident in July 2020 but whether he remained capable of working after the alleged onset date.

Plaintiff notes a December 2021 ER visit based on increased blood sugar after he ate an entire pie, at which he responded equivocally when asked if he had done this to harm himself. (R. 16-1 at 11, citing Tr. at 630.) The ALJ did not mention this specific note, but that does not require remand. See Jones v. Astrue, 623 F.3d 1155, 1162 (7th Cir. 2010) ("The ALJ need not, however, discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability."). The ALJ sufficiently discussed the evidence regarding plaintiff's diabetes, including the later note from his treating endocrinologist indicating diabetes is "optimally controlled." (Tr. at 24, quoting Tr. at 2788.) The ALJ also discussed plaintiff's mental health complaints and (limited) treatment, finding that plaintiff failed to prove disabling limitations. (Tr. at 25-27.)[3]

---

[3]In reply, plaintiff appears to reference later mental health records that are not in the administrative record. (R. 37 at 14.) The correctness of an ALJ's decision depends on the evidence that was before her; she cannot be faulted for having failed to weigh evidence never presented to her. Eads v. Sec'y of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993). The ALJ considered the evidence of record from Professional Services Group, the provider plaintiff mentions. (Tr. at 26.) Plaintiff also cites a notation in Dr. Klockow's report that he volunteers with children at church for three hours per week. (Tr. at 2390.) Plaintiff states that he no longer does this. (R. 37 at 15.) The ALJ was permitted to rely on the evidence of record

Plaintiff concludes that he has been out of work since July 14, 2020, that he has undergone numerous procedures since then to deal with his symptoms, and that his condition has gotten worse. (R. 16-1 at 15.) It is not the role of a reviewing court to reevaluate the facts or re-weigh "the evidence to decide whether a claimant is in fact disabled." Stephens v. Berryhill, 888 F.3d 323, 327 (7th Cir. 2018). The ALJ considered the evidence regarding plaintiff's various physical and mental conditions, adequately explained her findings, and reached a reasonable conclusion based on the evidence before her.

In reply, plaintiff contends that the ALJ selectively considered the evidence (R. 37 at 1-2), but he again points to no important evidence she overlooked. Plaintiff cites various treatment notes documenting, e.g., chronic neck and back pain, uncontrolled type 2 diabetes, use of a cane, and dyspnea on exertion (R. 37 at 18-20; see also R. 16-1 at 16, listing impairments; R. 37 at 23, same), but he fails to explain how these notes compel the inclusion of additional limitations. See Richards v. Berryhill, 743 Fed. Appx. 26, 30 (7th Cir. 2018) ("[P]ointing to various diagnoses and complaints and saying that they might hinder Richards is insufficient to establish the existence of a functional limitation."). Plaintiff quotes his lawyer's closing statement at the hearing that his impairments limit him to less than sedentary work with significant absences and time off-task. (R. 37 at 24-25, citing Tr. at 65.) However, he cites no evidence compelling the inclusion of such limitations in the RFC.

---

(Tr. at 26, citing this activity), and her decision cannot be overturned based on later developments. See Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008) ("If Mr. Getch has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application."); see also McFadden v. Astrue, 465 Fed. Appx. 557, 560 (7th Cir. 2012) (stating that evidence which shows the claimant's condition worsened is not material because it does not describe her condition in the period before the ALJ rendered her decision, and that if any of the claimant's conditions worsened since the ALJ issued her decision then she may reapply for benefits).

### 2. Conduct of the Hearing

Plaintiff complains that he received a telephonic rather than an in-person hearing, which he was not allowed to record. (R. 16-1 at 6; R. 37 at 3.) As discussed above, while plaintiff and his lawyer filed conflicting pre-hearing forms, at the hearing plaintiff agreed on the record to proceed by phone. (Tr. at 42-43.) Plaintiff develops no argument that telephonic hearings are impermissible. See Marie C. v. Comm'r of Soc. Sec., No.: 1:24-cv-00299-BLW-REP, 2025 U.S. Dist. LEXIS 182478, at *9 n.1 (D. Idaho Aug. 21, 2025) (finding no due process violation when the claimant agreed to a telephonic hearing), adopted, 2025 U.S. Dist. LEXIS 179443 (D. Idaho Sep. 11, 2025). And as also indicated above, plaintiff never asked to record the hearing.[4]

Plaintiff further complains that his lawyer told him to change the onset date, but he did not understand why. (R. 16-1 at 8.) The ALJ confirmed on the record that plaintiff wanted to amend the onset date, that he had discussed this with his lawyer, and that he had no questions about it. (Tr. at 47.) Whatever issues plaintiff may have with his lawyer's representation provide

---

[4]As the Commissioner notes, the agency's hearings manual contains a provision addressing recording:

> If an ALJ grants a claimant or representative's request to make a private recording of a hearing, the ALJ's opening statement will include language reflecting the following information:
>
> You asked if you may make a private recording of the proceedings of this hearing. This request is granted for the purpose of providing information for your personal use and convenience in pursuing this claim. However, if your recording interferes with the orderly conduct of the hearing, I will withdraw this permission. The hearing proceedings are confidential, and unauthorized use or disclosure of information shared or obtained at the hearing is prohibited by law, except as expressly permitted by the Privacy Act and the Freedom of Information Act. I also remind you that the recording I am making will be the official verbatim record of this proceeding.

HA 01260.052 Opening Statement.

no basis for remand. See Turner v. Berryhill, No. 17-CV-1130, 2018 U.S. Dist. LEXIS 206104, at *19 (E.D. Wis. Dec. 6, 2018) ("Courts have consistently held that there is no ineffective assistance of counsel claim in social security appeals."); Peters v. Berryhill, No. 16-cv-1271-JPG-CJP, 2017 U.S. Dist. LEXIS 127148, at *11 (S.D. Ill. Aug. 10, 2017) ("Any argument that plaintiff's attorney committed malpractice in representing him before the agency cannot be considered here because professional negligence, if it occurred, would not be grounds to reverse the Commissioner's decision."). An ALJ is entitled to presume that a represented claimant has made his strongest case for benefits. E.g., Bertaud v. O'Malley, 88 F.4th 1242, 1245 (7th Cir. 2023).

Plaintiff notes that at one point the hearing transcript notes "an awful lot of feedback." (R. 16-1 at 9, citing Tr. at 51.) Review of the transcript reveals that plaintiff's counsel's phone was causing the feedback; after the ALJ raised the issue, counsel fixed the problem. The ALJ then picked up her questioning of plaintiff right where she left off, discussing plaintiff's treatment since early 2024. (Tr. at 51.) There is no indication in the record that the ALJ missed important testimony due to the feedback.

Plaintiff states that later in the hearing he got confused and mixed up some dates (R. 16-1 at 9, citing Tr. at 53) and started to scramble his words (R. 16-1 at 10, citing Tr. at 57). However, he fails to explain how this impacted the ALJ's decision. Plaintiff also contends that he is dyslexic and cannot do numbers, which caused confusion when the ALJ asked him what percentage of the day he spent laying down. (R. 16-1 at 9, citing Tr. at 55.) Again, however, he fails to explain how this affected the ALJ's decision.

Plaintiff complains that the ALJ cut him off and would not let him finish his answers. (R. 16-1 at 9, citing Tr. at 56.) The transcript does not support this claim; in any event, the ALJ

permitted plaintiff's counsel to question plaintiff without interruption. (Tr. at 59-62; see Tr. at 61 counsel asking plaintiff if there was anything else they didn't talk about.) Plaintiff identifies no additional testimony he was precluded from giving. See Wallace v. Astrue, No. 2:10-cv-428-GZS, 2011 U.S. Dist. LEXIS 112057, at *23 (D. Me. Sep. 27, 2011) ("The claim has no merit where, as here, a claimant fails to specify what additional testimony he would have given and how that testimony would have changed the result."), adopted, 2011 U.S. Dist. LEXIS 120109 (D. Me. Oct. 17, 2011).

Plaintiff asks why he was not allowed to have anyone in the room with him while he testified, why he was not allowed to record the hearing, and why he was not allowed to finish his sentences. (R. 16-1 at 13.) The ALJ explained that, just like an in-person hearing, a telephonic hearing would not be open to the public so as to protect plaintiff's privacy. (Tr. at 42.) The ALJ also explained that plaintiff's testimony had to be his own; no one could assist him. (Tr. at 43.) Finally, the ALJ explained that the agency was making a verbatim audio recording, which would be the official record, and that no other recording could be made without her express permission. (Tr. at 44.) These are common aspects of social security hearings and, as indicated above, plaintiff never asked to record the hearing or to have someone present with him while he testified. In reply, plaintiff indicates he did not know he could ask to record or have his wife be there. (R. 37 at 4-5.) However, he fails to explain how he was prejudiced by any misunderstanding. As also indicated above, the record does not support plaintiff's claim that the ALJ interrupted him. Nor do I see any indication that the ALJ "emasculat[ed] him over the phone." (R. 16-1 at 14.) "ALJs possess considerable discretion in how they conduct hearings and question witnesses," Engel v. Bisignano, 829 F. Supp. 3d 561, 579 (E.D. Wis. 2026), and plaintiff demonstrates no reversible error in his case.

### 3. Agency Conduct

Plaintiff complains that agency employees filled out forms stating: "No contact with claimant." (R. 16-1 at 10, citing Tr. at 329; R. 16-1 at 11, citing Tr. at 479.) He wonders how they could make a decision without seeing him. (R. 16-1 at 11.) The court reviews the "final decision of the Commissioner of Social Security made after a hearing," 42 U.S.C. § 405(g), not previous steps in the administrative process. As the Commissioner notes, these forms are not adjudications of plaintiff's claim; that was done by the ALJ. (R. 33 at 7.) Plaintiff does not allege that these forms in any way influenced the ALJ's decision.

Plaintiff also expresses frustration over his dealings with agency personnel. (R. 16-1 at 14.) Delays in adjudicating disability claims are unfortunate but do not, standing alone, support remand. See Kealey v. Bisignano, No. 25-C-1361, 2026 U.S. Dist. LEXIS 178908, at *20 (E.D. Wis. Aug. 11, 2026); see also Hawrelak v. Colvin, 667 Fed. Appx. 161, 163 (7th Cir. 2016) ("We have considered the remainder of Hawrelak's arguments—which mostly involve complaints about various procedural missteps that delayed the processing of his case—and none provides a basis for overturning the ALJ's decision.").

Finally, plaintiff contends that he received inconsistent information about whether he could submit more medical evidence. (R. 16-1 at 4; R. 23 at 1; R. 37 at 15-16.) Because plaintiff was represented by counsel at the hearing, he is presumed to have made his "best case before the ALJ." Summers v. Berryhill, 864 F.3d 523, 527 (7th Cir. 2017). Counsel submitted treatment records, which were made part of the record (Tr. at 369-441), and the ALJ agreed to hold the record open for 14 days so counsel could obtain additional records (Tr. at 45). Plaintiff identifies no material evidence missing from the record. And, as the Commissioner notes, plaintiff was advised by the agency that he could submit new evidence to the Appeals

Council. (Tr. at 14, 246.) Plaintiff fails to demonstrate that he was prejudiced by any alleged mis-advice about new medical evidence.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is affirmed, and this case is dismissed. The clerk is directed to enter judgment accordingly.[5]

Dated at Milwaukee, Wisconsin this 30th day of September, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

[5]On July 10, 2026, plaintiff filed a motion for extension of time and request for defendant to provide copy of brief. In that motion, plaintiff indicated he had not received a copy of the Commissioner's response brief. However, plaintiff filed a reply brief a few days later, prior to the deadline, which specifically discusses the Commissioner's arguments, demonstrating that plaintiff received the response brief. The motion (R. 36) is therefore moot and may be terminated.